849 F.2d 605
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Laurence H. LEVY, Trustee, Plaintiff-Appellee,
v.
Lucille P. RUNNELLS, Defendant-Appellant.
Laurence H. LEVY, Trustee, Plaintiff-Appellee,
v.
Lucille P. RUNNELLS, Defendant-Appellant.
Laurence H. LEVY, Trustee, Plaintiff-Appellee,
v.
Lucille P. RUNNELLS, Defendant-Appellant.
In re Lucille P. RUNNELLS, Defendant-Appellant.
Laurence H. LEVY, Trustee, Plaintiff-Appellee,
v.
Lucille P. RUNNELLS, Defendant-Appellant.
 Nos. 87-2106, 87-2120, 87-2121 and 87-5804.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 1, 1988.
Decided: May 27, 1988.
 
 Bruce Edwin Arkema (Stanley K. Joynes, III; Rilee, Cantor, Arkema & Edmonds, on brief), for appellant.
 David Huntington Adams (Clark & Stant, P.C., on brief), for appellee.
 Before WIDENER, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case consolidates four appeals by Lucille P. Runnells challenging several decisions of the district court. The challenged decisions arise out of two civil contempt actions brought against Runnells by the bankruptcy trustee of Landbank Equity Corporation (Landbank) and ensuing efforts to enforce the resulting contempt judgments. The contempt actions stemmed from an injunction issued by the bankruptcy court overseeing the liquidation of Landbank, which forbade Runnells, as well as various other defendants in the trustee's separate fraud action, from disposing of any property beyond expenditures necessary for personal maintenance.
 
 
 2
 In appeal number 87-2106, Runnells challenges the continuing viability of the injunction, the sufficiency of the evidence to support the $85,627.22 contempt judgment issued against her, and various procedural decisions of the district court. In appeal number 87-2120, Runnells challenges the district court's $155,520 judgment against her in the second contempt action, arguing that it was barred by res judicata, and that insufficient evidence existed to support the award. In appeal number 87-2121, Runnells challenges the district court's refusal to modify the injunction to allow her to pay attorney fees. In appeal number 87-5804, Runnells challenges the district court's order that she be imprisoned until such time as she produces a good-faith plan to purge herself of contempt.
 
 
 3
 By order of August 31, 1987, this court directed Runnells be admitted to bail pending the decision in these appeals. In the Matter of Contempt Proceedings Against Lucille Runnells, No. 87-5804 (4th Cir. Aug. 31, 1987). We now affirm the district court in each of its decisions and rescind our order admitting Runnells to bail.
 
 I.
 
 4
 The genesis of Runnells' legal difficulties is her involvement, along with numerous members of her family and their associates, in the affairs of Landbank. In Levy v. Runnells, No. 87-2105 (4th Cir. Jan. 28, 1988), this court upheld the judgment of the bankruptcy court holding Runnells and the other defendants liable to Landbank's trustee for fraud and self-dealing at the expense of Landbank's creditors. The award against Runnells was $259,224.60. This judgment had yet to be satisfied at the time of the events giving rise to these appeals. During the pendency of the fraud action, the bankruptcy court issued an injunction forbidding the defendants "from disposing of any of their property ... exclusive of such nominal cash amounts as are required to maintain themselves."
 
 
 5
 In the course of contempt proceedings against another of the defendants, Runnells' son, William Robert Runnells, Jr., the trustee learned that Lucille Runnells had made expenditures in violation of the injunction. Testimony in the action against William Runnells identified certain improper expenditures by his mother and enabled the trustee to identify certain of her bank accounts and to obtain records of transactions in the accounts. The trustee filed his first civil contempt action to recover these improperly expended funds.[1] At the hearing before the district court, the trustee presented bank records documenting Runnells' expenditures and testimony concerning various improper expenditures. Runnells refused to testify concerning her expenditures or financial situation on the ground that any such testimony would be self-incriminating because they might reveal she had violated the injunction and expose her to liability for criminal contempt. The district court found Runnells had violated the injunction and awarded the trustee $85,627.22 in damages. Runnells satisfied this judgment through the court-approved sale of her condominium.
 
 
 6
 During the pendency of the contempt action, Runnells refused to surrender any financial records to the trustee, claiming they were privileged under the fifth amendment. At the hearing the district court ordered Runnells to segregate those records not themselves incriminating and provide them to the trustee. From the records the trustee received, he was able to identify various other bank accounts and expenditures. On the basis of the newly-discovered expenditures, consisting primarily of numerous loans to relatives and their businesses, the trustee filed a second contempt action. The trustee again established impermissible expenditures through bank records, and Runnells again declined to testify, asserting her fifth amendment rights. The district court found Runnells had committed additional violations of the injunction and awarded the trustee another $155,520 in damages. It ordered Runnells to appear at a hearing previously scheduled on a related matter to report on her compliance with the order, or to present a viable plan for prompt payment.
 
 
 7
 Initially, Runnells objected to the order on the ground that filing a plan would necessitate revealing incriminatory information. She argued that by admitting to income from any source obtained after the injunction came into effect, she would be admitting that she violated the injunction and thereby opening herself to liability for criminal contempt. Eventually, however, Runnells did present a proposed payment plan. In the plan, the only income she admitted receiving was $554.10 per month from a pension. Runnells' plan stated she had $1,186.44 per month in living expenses, but during the hearing on the plan, she testified to additional expenses that raised the total to approximately $1,400 per month. Runnells proposed to pay the trustee $50 per month out of her pension.
 
 
 8
 The trustee questioned Runnells about what had become of other income-producing property that appeared on her 1985 tax return. Runnells asserted the fifth amendment privilege and refused to respond. The district court accepted Runnells' argument that she could not be required to testify concerning any assets that she had purchased or sold since the injunction was issued.[2] The district court found Runnells' plan was not a good-faith effort to purge her contempt. It expressed serious concern that despite the $155,520 judgment against her, Runnells proposed to continue living in the same manner as she had previously.[3] It therefore ordered Runnells incarcerated until such time as she submitted a viable plan.
 
 
 9
 Runnells later filed a second proposed plan. In her second plan, Runnells proposed to reduce her expenses to $201 per month by moving in with a relative. Like her first plan, however, Runnells' second plan showed only $554.10 per month income. Runnells again asserted that the fifth amendment protected her against forced disclosure of any other income or assets. Runnells proposed to pay the difference between her reported income and her expenses--$353.10 per month--towards her $155,520 debt to the trustee.[4]
 
 
 10
 The district court held Runnells' second plan also was not a good-faith attempt to purge her contempt. The district court noted that Runnells had testified and documented she had $1400 per month in expenses, and it stated that sufficient evidence existed for it to infer she had at least sufficient funds to meet those expenses. It therefore concluded that any plan that asked the court to proceed on the premise that Runnells had only $554.10 in income was not a good-faith attempt at compliance with its order. Although the district court recognized Runnells' right to refuse to testify concerning the source of the balance of her income, it refused to accept any plan which allowed Runnells to keep the difference. The district court ordered that Runnells remain confined until such time as she presented a good-faith plan to purge her contempt.
 
 II.
 
 11
 Runnells contends she has been imprisoned because she has refused to waive her fifth amendment rights. She asserts that the district court has required her to reveal incriminatory information about her assets before it will approve a plan to purge her of contempt. This argument misrepresents the position the district court has taken.
 
 
 12
 The district court made clear at the time it ordered Runnells imprisoned that she was not being jailed for refusing to testify about her assets, but for failing after numerous opportunities to submit a good-faith plan to pay the contempt judgment against her.[5] Runnells testified that she had $1400 in monthly living expenses, and in her first plan, she proposed to continue that level of expenditures. On the evidence before it, the district court's finding that Runnells had at least enough income or assets to pay $1400 per month was entirely reasonable.[6] Yet Runnells submitted two plans in which she first proposed to pay $50 per month and then $353 per month on a $155,520 judgment. The court's rejection of the plans did not stem from Runnells' refusal to testify concerning the source of the approximately $850 per month in unreported income but from her insistence on keeping those funds for herself.
 
 
 13
 We agree with the district court's conclusion that Runnells failed to make a good-faith effort to purge her contempt. Runnells fails to recognize her obligation to pay the judgment against her. Although the fifth amendment may have protected her from being forced to disclose the illegal sources of her income, it did not entitle her to withhold from the court funds which she possessed. By testifying that she had spent and by proposing to continue spending $1400 per month, Runnells waived any privilege she may have had concerning the fact she had at least that amount of funds at her disposal. See United States v. Shamy, 656 F.2d 951, 959 (4th Cir.1981), cert. denied, 455 U.S. 939 (1982). The district court's requirement that Runnells file a good-faith plan in which she agreed to commit all proven excess income to satisfying the contempt judgment, in the absence of any requirement that she divulge the source of that income, implicated no fifth amendment rights. The decision to incarcerate Runnells for her continued flagrant refusal to make any reasonable effort to comply with the district court's order was an appropriate response.
 
 III.
 
 14
 During the course of the proceedings to enforce the contempt awards, Runnells requested the district court to modify the injunction to allow her to pay attorney fees. Although Runnells' attorneys submitted evidence to substantiate their fees, Runnells' motion was not for authorization of specific fee requests, but for a blanket modification to allow payment of fees without court approval of the individual payments. The district court denied Runnells' motion. The court pointed out that Runnells had large judgments against her for defrauding Landbank's creditors and for contempt, and that she refused to disclose her financial situation. It stated that before it would authorize Runnells to pay attorney fees, it would require evidence she had funds of her own with which to pay them.[7]
 
 
 15
 Runnells argues the district court's refusal to modify the injunction violated her sixth amendment right to counsel. Runnells further contends that the court's requirement she establish she has assets that do not belong to Landbank's creditors from which to pay attorneys' fees, conditions exercise of her right to counsel on waiver of her fifth amendment rights. We find no merit in these contentions.
 
 IV.
 
 16
 Runnells raises several other arguments, including challenges to the sufficiency of the evidence to support the contempt judgments, assertion of the doctrine of res judicata, and various procedural objections. We have reviewed these arguments and find them lacking of any merit. Accordingly, we affirm both contempt judgments, the district court's denial of Runnells' motion for modification of the injunction, and its order that she be incarcerated for failure to purge her contempt.
 
 
 17
 The judgments of the district court are affirmed, and we rescind our order of August 31, 1987, requiring the district court to admit Runnells to bail.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 These expenditures included numerous loans and gifts to relatives, the purchase of a sports car, and unauthorized payments of attorney fees on behalf of her son and herself
 
 
 [2]
 The court required Runnells to testify, however, concerning income she continued to receive from an installment sale contract she had entered into before the injunction issued. Runnells' testimony revealed an additional $376 per month income, which she had not accounted for in her proposed plan
 
 
 [3]
 Runnells' proposed expenses included $500 per month rent on her former condominium, a large telephone bill, and expenses for her granddaughter, who lived with Runnells at Runnells' expense
 
 
 [4]
 Runnells also proposed to assign to the trustee her rights to the installment contract that she had admitted possessing during the hearing on the first plan. She estimated the value of the contract to be between $17,000 and $18,000
 
 
 [5]
 Contrary to Runnells' assertion, the district court carefully protected her fifth amendment rights throughout the proceedings, permitting her to refuse to answer the trustee's questions concerning her present income and concerning what had become of various income-producing assets listed on her 1985 return
 
 
 [6]
 The mysterious disposition of the assets listed on Runnells' 1985 return and the discovery at the hearing of Runnells' $376 per month unreported income from the installment contract suggest the possibility Runnells had unreported income in excess of $1400. The district court apparently concluded, however, that insufficient evidence existed to establish any income greater than the $1400 per month Runnells testified she spent on living expenses
 
 
 [7]
 The court also noted that Runnells had had the representation of three separate lawyers during the various proceedings before it. It stated that another reason for refusing a blanket modification was that it insisted on reviewing the reasonableness of the attorneys' fees to avoid unjustified dissipation of whatever assets Runnells might have